UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MAIN,

       Plaintiff,                                 Hon. Gordon J. Quist

v.                                                     Case No. 1:10-CV-594

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 49 years of age as of the date of the ALJ's decision. (Tr. 42, 107). He possesses a General Equivalency Diploma (GED) and worked previously as an assistant service manager. (Tr. 41, 167-72).

Plaintiff applied for benefits on April 24, 2007, alleging that he had been disabled since June 15, 2005, due to tinnitus, headaches, and temper outbursts. (Tr. 107-09, 131). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 74-104). On September 9, 2008, Plaintiff appeared before ALJ Timothy Stueve, with testimony offered by Plaintiff and vocational expert, James Lozer. (Tr. 43-73). In a written decision dated October 14, 2008, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 32-42). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On March 17, 1999, Plaintiff was examined by Dr. Thomas Pfennig with Grand Rapids Ear, Nose, & Throat, P.C. (Tr. 224-26). Plaintiff reported "recurrent ear difficulties" as well as a history of snoring and sleep disruption. (Tr. 223-26). Plaintiff reported that "he has been tried

on C-PAP, but he is so claustrophobic that he cannot tolerate that." (Tr. 226). Plaintiff was diagnosed with "obstructive symptoms related to a deviated septum" and "erythema, edema and congestion of the nasal cavity." (Tr. 221). On April 27, 1999, Dr. Pfennig performed surgery to repair Plaintiff's deviated septum and sinus impairments. (Tr. 218-20). Treatment notes dated August 4, 1999, reveal that Plaintiff "has continued to snore," but "has seen significant improvement of his symptoms related to the ear with no ear infections since his surgery." (Tr. 216). On October 28, 1999, Plaintiff underwent surgery to treat his deviated septum and chronic sinusitis. (Tr. 213-14). On January 27, 2000, Plaintiff reported experiencing continued nasal congestion as well as snoring. (Tr. 212). Subsequent testing revealed that Plaintiff was experiencing an allergic reaction to various substances such as dust mites, ragweed, and animal dander. (Tr. 210). Treatment notes dated May 26, 2000 indicate that Plaintiff "does have a dog at home and he has not been doing much in regards to avoidance of the things that he is allergic to." (Tr. 209).

On April 6, 2001, Plaintiff participated in a polysomnography examination, the results of which revealed that he experienced "moderate sleep fragmentation secondary to sleep disorder breathing." (Tr. 231-32). On August 14, 2001, Plaintiff participated in a C-PAP titration evaluation the results of which revealed "that no pressure completely was effective in eliminating snoring, sleep disorder breathing and sleep fragmentation." (Tr. 227). Plaintiff was instructed to "avoid nocturnal sedatives or hypnotics" and "avoid alcohol within two hours of sleep." (Tr. 228).

On July 30, 2003, Plaintiff was examined by Dr. Kenneth Markiewicz. (Tr. 241-42). Plaintiff reported experiencing "bilateral otalgia and eustachian tube dysfunction with accompanying

tinnitus."[1]  (Tr. 241).  Plaintiff reported experiencing these problems "for at least the past five years."  (Tr. 241).  Following an examination the doctor diagnosed Plaintiff with: (1) bilateral eustachian tube dysfunction resulting in bilateral mild conductive hearing loss, and (2) temporomandibular joint syndrome.  (Tr. 242).  On September 4, 2003, Dr. Markiewicz inserted tubes into both of Plaintiff's middle ears.  (Tr. 239).

On May 11, 2007, Plaintiff's wife reported that Plaintiff watches television, cares for his animals, prepares meals, performs various household chores, mows the lawn, and washes laundry.  (Tr. 143-50).

On July 12, 2007, Plaintiff participated in a consultive examination conducted by Dr. Jarred Griffith.  (Tr. 270-72).  Plaintiff reported that since his two facial surgeries "he has had persistent 24 hour a day tinnitus, left greater than right."  (Tr. 270).  Plaintiff reported that "when his tinnitus becomes severe, he has nausea and dizziness."  (Tr. 270).  Plaintiff also reported that "because of the ringing in his ears and headaches. . .he was unable to continue working."  (Tr. 270). Plaintiff exhibited "diminished hearing being able to hear finger rub at the left ear at 6 inches and finger rub at the right ear at 18 inches, although he is able to hear normal conversational voice."  (Tr. 272).  The results of a physical examination were otherwise unremarkable.  (Tr. 271-72).

On July 31, 2007, Plaintiff participated in a consultive examination conducted by Beth Clevenger Baxter, MA, LLP.  (Tr. 283-86).  Plaintiff reported that he was disabled due to "severe tinnitus, ringing in both ears, headaches and temper outbursts."  (Tr. 283).  Plaintiff reported that his temper outbursts "began within a year of the tinnitus" and are "getting worse."  (Tr. 283).

---

[1] Tinnitus is "noise or ringing in the ears."  *See Tinnitus*, available at http://www.mayoclinic.com/health/tinnitus/DS00365 (last visited on August 8, 2011).  While "bothersome, tinnitus usually isn't a sign of something serious."  *Id.*

Plaintiff reported that he recently began taking Cymbalta. (Tr. 283). Plaintiff reported that he was not experiencing any side effects from this medication and, moreover, stated that "what's keeping me calm at this particular moment is the Cymbalta." (Tr. 283). Plaintiff also reported, however, that he was not presently being treated by any doctors, psychologists, social workers, or counselors. (Tr. 283).

Plaintiff reported that he was fired from his long-held job as assistant manager and service manager "because his boss found out he was looking for another job." (Tr. 284). With respect to activities, Plaintiff reported that he "picks up" around the house, and performs "gardening and yard work." (Tr. 285). Baxter reported that Plaintiff "presents as depressed and angry," but that "a tendency to exaggerate symptomatology regarding his tinnitus seemed probable." (Tr. 285). Plaintiff was diagnosed with "adjustment disorder and mixed anxious and depressed mood, chronic, partly controlled by medication" and his GAF score was rated as 48.[2] (Tr. 286). Baxter concluded that Plaintiff's "major symptoms appear to be irritability, lack of interest and temper outbursts secondary to trouble adjusting to the tinnitus." (Tr. 286). Baxter further concluded that Plaintiff "reports symptoms of anxiety secondary to family stressors" and "presents as unpleasant, self absorbed and like he's exaggerating his 'misery.'" (Tr. 286).

On August 22, 2007, Michael McCarthy, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 289-302). Determining that Plaintiff suffered from adjustment disorder with mixed anxiety and depressed mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 48 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

Impairments. (Tr. 290-98). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 299). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 299).

Dr. McCarthy also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 303-04). Plaintiff's abilities were characterized as "markedly limited" in one category and "moderately limited" in four categories. (Tr. 303-04). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff either was "not significantly limited" or that there existed "no evidence of limitation." (Tr. 303-04).

On May 19, 2008, Plaintiff participated in a consultive examination conducted by Dr. E.W. Fowler, Jr. (Tr. 314-15). Plaintiff reported that "he continues to struggle with tinnitus that has become extremely pronounced and debilitating." (Tr. 314). Plaintiff reported that, as a result, "he has become irritable, easily frustrated, finds it difficult to concentrate, and is dysphoric." (Tr. 314). Plaintiff appeared irritable and frustrated, but the results of a mental status examination were otherwise unremarkable. (Tr. 315). Plaintiff was diagnosed with mood disorder due to tinnitus and his GAF score was rated as 50. (Tr. 315). Dr. Fowler recommended to Plaintiff that he "treat his depression a bit more aggressively." (Tr. 315). Accordingly, the doctor increased Plaintiff's Cymbalta dosage and also prescribed Klonopin "to try to take some of the edge off the level of irritability and anxiety that he experiences." (Tr. 315). Following a June 18, 2008 examination, Dr.

Fowler discontinued Plaintiff's Cymbalta prescription and instead prescribed Lexapro. (Tr. 316). On July 16, 2008, Plaintiff reported to Dr. Fowler that his modified medication regimen "has been helpful in terms of leveling his mood [and] decreasing his irritability." (Tr. 317).

On March 21, 2008, Plaintiff participated in an MRI examination of his internal auditory canal the results of which revealed "abnormal signal within both mastoid regions, right side worse than left." (Tr. 330-31).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffers from (1) tinnitus with diminished bilateral hearing; (2) adjustment disorder with mixed anxiety and depressed mood; and (3) sleep apnea, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 37-38). The ALJ concluded that while Plaintiff was not able to perform his past relevant work, there existed a significant number of jobs he could perform despite his limitations. (Tr. 38-42). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following limitations: (1) he can only occasionally balance; (2) he must avoid all exposure to excessive noise; (3) he is limited to occupations that do not require fine hearing capability, frequent verbal

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

communications, or frequent telephone communications; (4) he is limited to one or two step tasks, with only occasional interaction with the public or co-workers; and (5) he is limited to work that is isolated with only occasional supervision. (Tr. 38). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert James Lozer.

The vocational expert testified that there existed approximately 56,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 67-68). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274

(6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374-75 (6th Cir., Mar. 1, 2006).

      a.      The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the ALJ violated the treating physician doctrine by failing to afford controlling weight to the opinions expressed by his treating physicians, Dr. Markiewicz and Dr. Emmons.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

Despite clearly framing this argument as constituting a violation of the treating physician doctrine, Plaintiff has failed to identify any opinion articulated by Dr. Markiewicz and Dr. Emmons that is inconsistent with the ALJ's determination. Instead, Plaintiff merely argues that the ALJ "clearly did not properly credit [the doctors'] diagnoses" that Plaintiff suffers from tinnitus. (Dkt. #9 at 16). As previously noted, the ALJ expressly found that Plaintiff suffered from tinnitus, which the Court notes is a diagnosis rather than a medical opinion entitled to deference. Moreover, the ALJ sufficiently accounted for Plaintiff's tinnitus in his RFC determination. As Plaintiff has failed to identify any medical opinion to which the ALJ failed to afford sufficient weight this argument is rejected.

      b.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that his impairments were disabling and prevented him from working. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 40). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ recognized, the objective medical evidence does not support Plaintiff's subjective allegations. As the ALJ also observed, none of Plaintiff's care providers have imposed work-preclusive limitations on Plaintiff. As Beth Baxter further observed, Plaintiff acted "like he's exaggerating his 'misery.'" Moreover, Plaintiff's argument that the ALJ failed to consider his work history when assessing his credibility is unpersuasive. The ALJ expressly considered Plaintiff's work history. As the ALJ

observed, Plaintiff "worked for several years [after first experiencing tinnitus] at a substantial gainful activity level despite this impairment." (Tr. 40). The ALJ also noted that Plaintiff did not lose his last job because of his impairment, but rather because he was fired when his supervisor learned that Plaintiff was seeking employment elsewhere. (Tr. 40). As the ALJ further noted, Plaintiff's subsequent attempts to obtain employment are inconsistent with his subjective allegations that he suffered from work-preclusive impairments and limitations. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

        c.        The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 56,000 such jobs. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

        d.        Plaintiff is not Entitled to Remand

In support of his arguments in this Court, Plaintiff has referred to evidence that was not presented to the ALJ, but was instead first presented to the Appeals Council. The Appeals

Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 1-5, 341-65). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material reveals the following. On October 24, 2008, Plaintiff voluntarily admitted himself to Forest View Hospital for treatment of depression. (Tr. 350-54). Plaintiff reported that he felt depressed, hopeless, and helpless. (Tr. 350). Plaintiff also reported that he was "having suicidal thoughts" and "just feels that he can no longer manage." (Tr. 350). Following his admission to the hospital, Plaintiff's medication regimen was modified. (Tr. 342). Plaintiff was discharged from the hospital on November 3, 2008. (Tr. 341). Upon discharge Plaintiff reported that he "does not feel depressed, hopeless, helpless, worthless, useless, irritable, angry and has no crying spells." (Tr. 342-43). Plaintiff's mood was characterized as "pleasant" and his thought processes were described as "logical." (Tr. 343). Plaintiff exhibited "no psychotic,

manic, anxious or depressed symptoms" and his insight and judgment were characterized as "improved." (Tr. 343). Plaintiff stated that he "feels much better and feels ready for discharge." (Tr. 343). Plaintiff's prognosis was characterized as "good if he will take medications as prescribed, keep all of his appointments, stay away from all alcohol, nicotine, caffeine and street drugs." (Tr. 343). Upon discharge Plaintiff's GAF score was rated as 60.[4]  (Tr. 344).

Remand in this matter is not warranted for two reasons. First, Plaintiff has not requested that this matter be remanded for consideration of this evidence. By failing to request remand or otherwise develop such an argument, the Court finds that Plaintiff has waived such relief. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same). Furthermore, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Such does not detract from the ALJ's decision, but instead indicates that Plaintiff's emotional impairments are amenable to treatment with appropriate medications. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

---

[4] A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: August 12, 2011                                             /s/ Ellen S. Carmody
                                                                                    ELLEN S. CARMODY
                                                                                    United States Magistrate Judge